Image ID:
D00595181D01                    **SUMMONS**                    Doc. No.    595181

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam
Omaha                    NE 68183

Larry R Forman v. Twin City Fire Insurance

Case ID: CI 19    1569

TO:  Twin City Fire Insurance
DBA: The Hartford

You have been sued by the following plaintiff(s):

Larry R Forman                          Hillman Forman Childers & McCormack

Plaintiff's Attorney:    David M Woodke
Address:                 619 N 90th Street
                         Omaha, NE 68114

Telephone:               (402) 391-6000

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  FEBRUARY 27, 2019    BY THE COURT:    John M. Friend
                                             Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

          Twin City Fire Insurance
          c/o CT Corp, Reg Agent
          2601 S. 59 Street
          Lincoln, NE 68516

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

**EXHIBIT
A**

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI190001569
Transaction ID: 0008256798
2/26/2019 03:45:31 PM CST

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| LARRY R. FORMAN and HILLMAN, FORMAN, CHILDERS & McCORMACK, a Nebraska partnership, | CASE NO. CI19-_____ |
| Plaintiffs, | |
| vs. | COMPLAINT FOR DECLARATORY JUDGMENT |
| TWIN CITY FIRE INSURANCE COMPANY, a foreign corporation, a/k/a THE HARTFORD, | |
| Defendant. | |

1.  Plaintiff, Larry R. Forman is a partner of Plaintiff Hillman, Forman, Childers & McCormack and Plaintiff Hillman, Forman, Childers & McCormack is a professional partnership authorized under the laws of Nebraska and doing business as a private practice law firm in Omaha, Douglas County, Nebraska.

2.  Defendant Twin City Fire Insurance Company, also known as The Hartford, is a foreign corporation, licensed to do business in Nebraska and doing business in Nebraska as an insurance company.

3.  That Defendant issued a Lawyers' Professional Liability Policy to Plaintiffs for several consecutive years and to and including February 4, 2019.

4.  That Defendant issued Policy No. LT 1413455-17 to Plaintiffs with policy period effective dates from: 2/4/2018 to 2/4/2019, a copy of which is attached hereto, marked Exhibit "1", and by this referenced incorporated herein.

5.  That on August 31, 2018, Plaintiffs gave written notice to Defendant of a lawsuit filed against Plaintiffs for alleged professional negligence.

6.  That by letter dated September 27, 2018, a copy of which is attached hereto, marked Exhibit "2", and by this reference incorporated herein, Defendant wrongfully denied coverage for the claim asserted in said lawsuit and denied a defense of same to Plaintiffs. Again, on November 9, 2018, Defendant reiterated its denial, a copy of which is marked as Exhibit "3." That Defendant's actions therein are in breach of the agreements, terms, and conditions of said policy of insurance.

- 1 -

7. That Plaintiffs have been wrongfully denied coverage and a defense to said lawsuit, and are incurring damages as a result thereof and will continue to incur damages as a result thereof.

WHEREFORE, Plaintiffs pray for judgment against Defendant determining the rights and obligations of the parties under the insurance policy issued to Plaintiffs by Defendant; that the policy provides coverage for the injury, if any, alleged in said underlying lawsuit; that Defendant is obligated to defend Plaintiffs against said lawsuit and to indemnify Plaintiffs for damages that may be awarded against it in said lawsuit; and for statutory attorney's fees and costs herein.

Dated the 26 day of _Feb._, 2019.

LARRY R. FORMAN and HILLMAN,
FORMAN, CHILDERS & McCORMACK,
a Nebraska partnership, Plaintiffs

By: _____

David M. Woodke, #15211
Woodke & Gibbons, P.C., L.L.O.
Historic Inns of Court Building
619 North 90th Street
Omaha, Nebraska 68114
(402) 391-6000
Fax: (402) 391-6200
Email: dwoodke@woglaw.com
ATTORNEYS FOR PLAINTIFFS

- 2 -

Name of Insurer: Twin City Fire Insurance Company          Indianapolis, IN



**THE HARTFORD**

## LAWYERS' PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY. COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO THE COMPANY IMMEDIATELY BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE EXPIRATION DATE OF THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS CLAIMS EXPENSES. THE DEDUCTIBLE IS APPLICABLE TO CLAIMS EXPENSES AND DAMAGES. PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT, BROKER, OR REPRESENTATIVE.

**POLICY NUMBER: LT 1413455**

**PRODUCER:** Target Insurance Services
1230 East Diehl Road, Suite 350
Naperville, IL 60563

**SERVICE OFFICE:** Target Insurance Services
1230 East Diehl Road, Suite 350
Naperville, IL 60563

**RENEWAL OF: LT 1413455-17**

## DECLARATIONS

**ITEM # 1.** **NAMED INSURED AND MAILING ADDRESS:**

Law Offices Hillman, Forman, Childers & McCormack

7171 Mercy Road, Suite 650
Omaha, NE 68106-2669

**ITEM # 2.** **POLICY PERIOD EFFECTIVE DATES:** **FROM: 2/4/2018 TO: 2/4/2019**
(12:01 A.M. standard time at the address shown in Item #1.)

**ITEM # 3.** **RETROACTIVE DATE: 08/01/1997**

**ITEM # 4.** **LIMITS OF LIABILITY:**

| LIMIT OF LIABILITY EACH CLAIM | $3,000,000 |
|---|---|
| AGGREGATE LIMITS OF LIABILITY | $3,000,000 |

**ITEM # 5.** **DEDUCTIBLE:**

| DEDUCTIBLE EACH CLAIM | $10,000 |
|---|---|
| AGGREGATE DEDUCTIBLE | N/A |

**ITEM # 6.** **PREMIUM PER POLICY PERIOD:** $18,618.00

If applicable State Surcharge:
State Muni Tax:

**ITEM # 7.** **ENDORSEMENTS: (See attachments.)**

EXHIBIT

_Authorized Representative_

**January 25, 2018**

Authorized Representative                 Date

LP 00 H052 00 0205          © 2005, The Hartford          Page 1 of 1

# ENDORSEMENT

This endorsement, effective on 2/4/2018 at 12:01 A.M. standard time, forms a part of:

Policy No. LT 1413455 of the Twin City Fire Insurance Company

Issued to Law Offices Hillman, Forman, Childers & McCormack

*Douglas Elliot*

Douglas Elliot, President

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| LP00M01900 | Schedule of Endorsements, |
| LP00H05301 | Lawyers Professional Liability Insurance Policy, |
| RN00N02600 | In Witness Page, |
| HG00H12900 (10-16) | US Dept of Treasury, Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders, |
| HR00H04800 | Policyholder Notice, |
| HR00H09300 | Producer Disclosure Notice, |
| HR00H11100 | Risk Management Hotline, |
| HR00H11000 | Risk Management Website, |
| HR26H00100 | Cancellation and Nonrenewal Endorsement, |
| LP00H07500 | Asbestos Exclusion Endorsement, |
| LP00H08800 | Mailing Address for Notice Endorsement, |
| LP00H09401 | Pollution Exclusion Endorsement, |
| LP00H12101 (4-15) | Network Security, Data Breach & Theft of Data End, |
| LP00H30500 (3-16) | Workplace Violence Coverage Endorsement, |
| LP00H30600 | Deception Fraud & Other Client Fund Fraud Extension |

LP 00 M019 00 0905

# LAWYERS' PROFESSIONAL LIABILITY INSURANCE POLICY

### NOTICE - THIS IS A CLAIMS MADE AND REPORTED POLICY.

### PLEASE READ IT CAREFULLY.

**COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO THE COMPANY IMMEDIATELY BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE EXPIRATION DATE OF THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS CLAIMS EXPENSE.  THE DEDUCTIBLE AMOUNT IS APPLICABLE TO CLAIMS EXPENSE AND DAMAGES.**

All words or phrases (other than captions) that appear in bold face are defined in **SECTION I: B. DEFINITIONS**.  The descriptions in the headings and subheadings of this policy are solely for convenience and form no part of the terms, conditions, exclusions and limitations of this policy.

Throughout the policy the words "you" and "your" refer to the named **insured** and predecessor firm(s).  The words "we", "us" and "our" refer to the company providing this insurance as shown in the Declarations.

In consideration of the payment of the premium as set forth in the Declarations, and in reliance upon the statements, representations, and warranties in the application which are made part of this policy, and subject to the **limit of liability** as set forth in the Declarations and to all the exclusions, conditions, and other terms of the policy, we agree with you as follows:

### SECTION I: SCOPE OF COVERAGE

## A.  COVERAGE AGREEMENT

We will pay on behalf of an **insured**, subject to the **limit of liability**, such **damages** and **claims expense** in excess of the applicable **deductible** amount for **claims** made during the **policy period** or applicable **extended reporting period** and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the **policy period** or applicable **extended reporting period**.  The **damages** must arise out of a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** or **non-profit services** for others by you or on your behalf provided always that the negligent act, error, omission or **personal injury** occurs on or after the **retroactive date** as stated in the Declarations.

## B.  DEFINITIONS

Whenever used in the policy:

1. **Bodily injury** means **bodily injury**, sickness or disease sustained by a person, including the death of any person, resulting at any time.  **Bodily injury** includes mental anguish and emotional distress.

2. **Claim** means:

   a. A demand received by an **insured** for money or services alleging a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** or **non-profit services** for others by you or on your behalf;

   b. Service or receipt of a suit or arbitration proceedings or any other alternative dispute resolution proceeding in which **damages** are claimed; or

   c. A request received by an **insured** for a tolling agreement with respect to statutes of limitations or other bars against the filing or maintenance of lawsuit or arbitration proceeding seeking **damages** or services from an **insured**.

3. **Claims expense** means all reasonable and necessary fees charged by (an) attorney(s) designated or approved in writing by us and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim**, suit or proceeding arising in connection therewith, if incurred by us or by an **insured** with our written consent.  **Claims expense** includes but is not limited to;

   a. Costs taxed against an **insured** in **claims** or suits;

b. Interest on the entire amount of any judgment which accrues after the entry of judgment and before we have paid or tendered or deposited into court that part of the judgment which does not exceed the applicable limit of liability shown in the Declarations;

c. Premiums on appeal bonds in any suit and premium on bonds to release attachments in any suit for an amount not in excess of the applicable limit of liability shown in the Declarations. We shall not be obligated to apply for or furnish any bonds; and

d. Reasonable and necessary expenses incurred by an insured at our request to assist us in the investigation of a claim, including actual loss of earnings up to $500 a day for each insured because of time off from work, subject to a limit of $5,000 for each individual insured and subject to a maximum limit of $10,000 per policy period. The deductible amount does not apply to these expenses.

4. **Damages** mean compensatory damages that an insured becomes legally obligated to pay as a result of any judgment, award or settlement, provided any settlement is negotiated with our assistance and approval.

Damages do not include:

a. Any fines, sanctions or penalties, or punitive or exemplary damages;

b. Restitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an insured for professional legal services;

c. Any damages which are a multiple of compensatory damages awarded against an insured;

d. Matters deemed uninsurable by law; or

e. Equitable, injunctive or other non-monetary relief.

5. **Domestic partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or any domestic partner relationship arrangement recognized outside of the U.S.

6. **Extended reporting period** means a period of time immediately following the effective date of termination, cancellation, or non-renewal of this policy in which claims may be made against an insured and reported to us under this policy and are the result of a negligent act, error, omission, or personal injury which occurred prior to the end of the policy period and after the retroactive date and which are otherwise covered under this policy.

7. **Insured** means:

a. The named insured and predecessor firm(s);

b. Any lawyer who was, is now or hereafter becomes a principal, officer, director, employee, principal shareholder or member of yours, but only while acting within the scope of their duties for you;

c. Any lawyer who has retired from you, but only for professional legal services while acting within the scope of his or her duties for you;

d. Any lawyer retained as an of counsel, independent contractor or on a per diem basis by you, but only with respect to professional legal services while acting within the scope of their duties for you;

e. Any non-lawyer employees, but only while acting within the scope of their duties for you;

f. Any insurance risk manager who is an employee of the named insured; and

g. Any organization you newly acquire or form provided written notice is given to us within sixty (60) days of the acquisition or formation, the new entity meets our underwriting eligibility guidelines, and we provide you with our written acceptance. This provision applies to any principal, officer, director, employee, principal shareholder or member of such newly acquired or formed organization.

However, coverage under this provision does not apply to claims that occurred before you acquired or formed the organization.

8. **Limit of liability** means the most that we will pay for all damages and claims expense for all claims to which this insurance applies pursuant to SECTION I: D. LIMIT OF LIABILITY AND DEDUCTIBLE.

9. **Lobbyist** means a lawyer who is registered in accordance with any federal or state statute governing the conduct of lobbyists.

10. **Named Insured** means the individual or entity stated in the Declarations.

11. **Non-profit entity** means any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

12. **Non-profit services** means only services that the insured performs for others, with the knowledge and consent of, or as part of the duties regularly assigned by, the named insured, while serving in the capacity as a:

    a.  director, officer or committee member of an attorneys' bar association; or

    b.  director, officer or trustee of a non-profit entity.

13. **Personal Injury** means injury, other than bodily injury, arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Abuse of process or malicious prosecution;

    c.  Wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

    d.  The publication or utterance of a libel or slander or other defamatory or disparaging material or publication or utterance in violation or an individual's right of privacy.

14. **Policy period** means the period from the inception date of this policy to the policy expiration date as stated in the Declarations or the date of cancellation, whichever is earliest.

15. **Predecessor firm** means any legal entity disclosed to us which was engaged in the practice of law and to whose financial assets and liabilities the named insured is the majority successor in interest.

16. **Professional legal services** means services performed or advice given by you or on your behalf, including pro-bono services performed with the written consent of the named insured, for others in the conduct of your practice as a:

    a.  Lawyer;
    b.  Real estate title insurance agent;
    c.  Notary public;
    d.  Arbitrator;
    e.  Mediator;
    f.  Lobbyist;
    g.  Member, director, or officer of any attorneys' bar association, its governing board or any of its committees; or
    h.  Administrator, conservator, executor, guardian, trustee, receiver, or any similar fiduciary capacity.

    **Professional legal services** includes the publication or presentation of research papers or similar materials by an insured, but only if the fees generated from such work are not greater than five thousand dollars ($5,000).

    **Professional legal services** does not include services performed or advice given while acting in the capacity of an employee, officer, director, partner, shareholder, principal, investor, member, agent or in any other capacity that gives rise to a conflict of interest of any organization other than the named insured or any predecessor firm(s).

17. **Property damage** means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property; or

    b.  Loss of use of tangible property that is not physically injured.

18. **Retroactive date** means the date specified in the Declarations, or in any endorsement attached to this policy, on or after which the negligent act, error, omission, or personal injury must have occurred in order for any claim or any notice of circumstance given to us pursuant to **SECTION IV: A. AWARENESS OF CIRCUMSTANCES** and **B. NOTICE OF CLAIM** to be covered under this policy.

## C.  DEFENSE AND SETTLEMENT

Subject to all terms and conditions of the policy, we shall appoint counsel of our choice to defend any suit against an insured seeking damages which are payable under the terms and conditions of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent. Other than suits for damages as set forth above, we at our sole option shall have the right, but not the obligation, to appoint counsel to defend any suit or other proceeding.

We will not settle a claim without an insured's consent, which consent will not be unreasonably withheld. If, however, an insured refuses to consent to a settlement recommended by us and acceptable to the claimant and elects to pursue the defense of the claim or continue proceedings in connection with the claim, then our liability for damages and claims expense relating to that claim will not exceed the amount for which we would have been liable for damages and claims expense if the claim had been so settled when and as so recommended, plus 50 (fifty) percent of all additional damages and claims expense in excess of such amount. The balance of such liability will be retained by the insured. The insurer will have the right to withdraw from the further defense of the claim by tendering control of the defense thereof to the insured. The operation of this paragraph will be subject to SECTION I: D. LIMIT OF LIABILITY AND DEDUCTIBLE.

Bankruptcy, insolvency, or dissolution of an insured or of an insured's estate shall not relieve us or the insured of its obligations under this policy. In the event of your bankruptcy, insolvency, or dissolution, we shall have, at our sole option, the right to settle any claim without obtaining consent.

We shall not be obligated to pay damages or claims expense or defend or continue to defend any claim after the applicable limit of liability as stated in the Declarations has been exhausted by payment of damages or claims expense or a combination of both.

## D.  LIMIT OF LIABILITY AND DEDUCTIBLE

Regardless of the number of insureds under this policy, the number of persons or organizations seeking damages, the number of claims made or the number of extended reporting periods purchased, our liability is limited as follows:

1.  **Limit of Liability**

    a.  The amount stated in the Declarations as applicable to each claim is the most we will pay for all damages and claims expense arising out of the same or related negligent acts, errors, omissions or personal injury. All claims arising out of the same or related negligent acts, errors, omissions or personal injury will be deemed to have been made when the first of such claims is made whether such demands are made against one or more insureds or whether such demands are made by one or more persons and will be treated as a single claim.

    b.  The amount shown in the Declarations as the aggregate limit is the most we will pay for all damages and claims expense for all claims to which this insurance applies.

2.  **Deductible**

    a.  Our obligation to pay damages and claims expense under this policy applies only to that portion of damages and claims expense which are in excess of the deductible amount stated in the Declarations.

    b.  The deductible amount applies to all damages and claims expense incurred as the result of each claim.

    c.  The terms of the policy, including those with respect to our right and duty to defend suits and your duties in the event of a claim, suit or circumstances which may give rise to a claim, apply irrespective of the application of the deductible amount.

    d.  We may pay any part or all of the deductible amount in the investigation or settlement of any claim. Upon notification of the action we have taken, you shall reimburse us for that part of the deductible amount we have paid. If we make a payment under the deductible amount and you do not reimburse us within sixty (60) days, we will be entitled to recover reasonable attorney's fees incurred in collecting the amount we have paid.

    e.  The limit of liability will not be reduced by the amount of any damages and/or claims expense within the deductible amount.

©2015, The Hartford

f.   We will reduce the deductible amount stated in the Declarations by fifty percent (50%) if you agree with a request we make, and agree with the terms and conditions we specify, to submit a claim made against you to binding arbitration or mediation. While the right to submit a claim to binding arbitration or mediation shall be ours solely, no claim shall be submitted to arbitration without your prior written consent. In the case of mediation, the maximum dollar amount the deductible amount will be reduced under this provision is $10,000.

## E. TERRITORY

This policy applies to any negligent act, error and omission or personal injury in the rendering of or failure to render professional legal services anywhere in the world, provided that claim is made and suit, if any, is brought within the United States of America (including its territories or possessions), Puerto Rico or Canada.

## F. EXTENDED REPORTING PERIODS

1.   We will provide one or more extended reporting periods if we or you cancel or non-renew the policy for any reason other than non-payment of premium or reimbursement of the deductible amount or if you leave the practice of law as a result of loss, suspension, or involuntary surrender of a license to practice law. If you have a solo practice when you lose your license, then neither the firm nor you are eligible to purchase or receive an extended reporting period.

a.   **Extended Reporting Period**

You will have the right to purchase an extended reporting period. You must exercise such right by providing written notice to us accompanied by the additional premium within sixty (60) days after the termination of the policy. If any extended reported period is exercised, an endorsement will be processed. This endorsement will cover claims first made during the extended reporting period for negligent acts, errors, omissions, or personal injury which occurred prior to the end of the policy period and are otherwise covered by the policy. The additional premium for the extended reporting period is based on a percentage of the full annual premium for the policy period and shall be:

100% of the policy's annual premium for one year;

165% of the policy's annual premium for three years;

200% of the policy's annual premium for five years; or

250% of the policy's annual premium for an unlimited period.

b.   **Retirement Extended Reporting Period**

If an insured, after being insured for Lawyer's Professional Liability Coverage with a member of the Hartford Financial Services Group, Inc. group of companies for three or more full consecutive years:

i.    Retires from the practice of law during the policy period;

ii.   Ceases the performance of all professional legal services covered by this policy; and

iii.  Is fifty-five (55) years of age or older;

they will be provided an unlimited extended reporting period without additional charge. The insured, within sixty (60) days after the end of the policy period must notify us in writing that this coverage is desired. This retirement extended reporting period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

c.   **Death or Disability Extended Reporting Period for a Sole Practitioner**

If you die or become totally and permanently disabled during the policy period, a death or disability extended reporting period for a sole practitioner shall be provided without additional charge. Coverage for reporting claims is extended until the executor or administrator of the estate is discharged or your disability ends. You or your estate must, within sixty (60) days after the end of this policy period, notify us in writing if

this coverage is desired. This death or disability extended reporting period for a sole practitioner does not apply to claims that are covered under any subsequent insurance available to you, or that would be covered but for exhaustion of the amount of insurance applicable to such claims. We also require:

i.     Written proof of your permanent and total disability, including the date it happened, certified by your attending physician. You agree to submit to medical examination(s) by any physician(s) we designate if requested; or

ii.    Written proof of the date of your death.

d.   **Individual Extended Reporting Period**

During a claims-made relationship and any extended reporting period, a person employed or otherwise affiliated with you and covered by your claims-made policy during such affiliation will continue to be covered under such policy and any extended reporting period after such affiliation has ceased for such person's covered negligent acts, errors, omissions or personal injury during such affiliation. If this policy was issued to a corporation or partnership, we will provide individual extended reporting period coverage upon termination of coverage to any person covered under the policy if:

i.     You have been placed in liquidation or bankruptcy or permanently cease operations;

ii.    You do not purchase extended reporting period coverage; and

iii.   The individual insured requests the individual extended reporting period coverage in writing within sixty (60) days of the end of the policy period. Upon payment of the additional premium, we will issue an endorsement providing a one, three, five or unlimited individual extended reporting period. This endorsement will cover claims first made during the individual extended reporting period for negligent acts, errors, omissions or personal injury which occurred prior to the end of the policy period and are otherwise covered by the policy. The additional premium for the individual extended reporting period is based on a percentage of the full annual premium for the policy period as stated in **SECTION I: F. EXTENDED REPORTING PERIODS 1. a.** We will not be obligated to provide any notice to any person of the availability of the individual extended reporting period coverage other than the first named insured.

2. **Extended Reporting Period Coverage**

The limit of liability available for any extended reporting period is part of, and not in addition to, the limit of liability as shown in the Declarations. The deductible amount shown on the Declarations will apply separately to each claim reported under any extended reporting period. The deductible amount will be waived in the event of the insured's death or if the insured becomes totally and permanently disabled.

None of the extended reporting periods are cancelable or renewable. The additional premium for the extended reporting period is fully earned at the inception of the extended reporting period.

## SECTION II: COVERAGE EXTENSIONS

### A. SPOUSAL/DOMESTIC PARTNER LIABILITY COVERAGE

Coverage shall apply to the lawful spouse or domestic partner of an insured for a claim made against such spouse or domestic partner, provided that:

1. such claim arises solely out of:

   a.   such person's status as the spouse or domestic partner of an insured; or

   b.   such spouse or domestic partner's ownership of property sought as recovery for a negligent act, error, omission, personal injury or non-profit services;

2. the insured is named in such claim together with the spouse or domestic partner; and

3. coverage of the spouse or domestic partner shall be on the same terms and conditions, including any applicable deductible amount, as apply to coverage of the insured for such claim.

No coverage shall apply to any claim for any negligent act, error, omission, personal injury or non-profit service of such spouse or domestic partner.

## B. ESTATES AND LEGAL REPRESENTATIVES

In the event of the death, incapacity or bankruptcy of an Insured, any claim made against the estate, heirs, legal representatives or assigns of such Insured for a negligent act, error, omission or personal injury of such   Insured shall be deemed a claim made against such Insured. No coverage shall apply to any claim for a negligent act, error, omission or personal injury of such estate, heirs, legal representatives or assigns.

## C. DISCIPLINARY OR REGULATORY PROCEEDING COVERAGE

We shall pay reasonable and necessary fees, costs and expenses (but not damages or sanctions) incurred by an Insured resulting from the defense of a proceeding by a regulatory or disciplinary official or agency first initiated and reported to us during the policy period to investigate a charge of professional misconduct in the rendering of or failure to render professional legal services subject to a limit of $50,000 for each Insured and subject to a maximum limit of $100,000 per policy period. No deductible shall apply to this coverage extension nor shall expenses paid under this coverage extension serve to reduce the limit of liability. This coverage is also subject to any exclusions of the policy and coverage defenses which might apply with respect to claims. In order to receive coverage under this provision, you must give us written notice prior to the end of the policy period and no later than thirty (30) days of receipt of any disciplinary allegation made against any Insured.

## D. SUBPOENA ASSISTANCE COVERAGE

If the Insured first received during the policy period a subpoena for documents or testimony as fact witness arising from their rendering of professional legal services which occurred after the retroactive date and is reported to us during the policy period, and the Insured would like our assistance in responding to the subpoena, the Insured may provide us with a copy of the subpoena and we will retain an attorney and we shall pay reasonable and necessary fees, cost and expenses to provide advice regarding the production of documents, to prepare the Insured for sworn testimony and to represent the Insured at their deposition subject to a limit of $50,000 for each Insured and subject to a maximum limit of $100,000 per policy period, provided that:

1. The subpoena arises out of a lawsuit to which the Insured is not a party; and

2. The Insured has not been engaged to provide advice or testimony in connection with the lawsuit, nor has the Insured provided such advice or testimony in the past.

   This coverage is also subject to any exclusions of the policy and coverage defenses which might apply with respect to claims. This amount is not subject to any deductible amount nor shall expenses paid under this coverage extension serve to reduce the limit of liability. In order to receive coverage under this provision, you must give us written notice within thirty (30) days of receipt of any subpoena received by any Insured.

## E. PRE-CLAIM EXPENSE COVERAGE

At our discretion, we will pay reasonable and necessary fees, costs and expenses incurred by us in the investigation of a matter reported to us according to the provisions of SECTION IV: A. AWARENESS OF CIRCUMSTANCES. Such fees, costs and expenses must be incurred prior to the date than any claim is made arising out of such circumstances, are not subject to the deductible amount and do not reduce the limit of liability. Once a notice of circumstance becomes a claim, damages and claims expense that result from such claim are subject to the deductible amount and will reduce the limit of liability.

## SECTION III: EXCLUSIONS

## EXCLUSIONS

This insurance does not apply to claims:

1. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission, personal injury or non-profit service committed by, at the direction of, or with the knowledge of an Insured. This exclusion does not apply to an Insured who did not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or personal injury, provided that:

   a. Such Insured had neither notice nor knowledge of such knowingly wrongful act, error, omission, personal injury or non-profit services; and

   b. Such Insured, upon receipt of notice or knowledge of such knowingly wrongful act, error, omission, personal injury or non-profit service, immediately notifies us.

2. Arising out of professional legal services rendered by an Insured while the insured's license to practice law was suspended, revoked, surrendered or lapsed.

3. Arising out of bodily injury or property damage.

4. Made by one Insured under this policy against another Insured unless it arises out of a negligent act, error or omission committed by or alleged to have been committed by an Insured in his or her rendering professional legal services as an attorney or notary for such Insured bringing the claim and the claim is brought without the cooperation, solicitation or assistance of any other Insured.

5. Arising out of any actual or alleged discrimination of any kind by an Insured.

6. Arising out of an Insured's activities and/or capacity as a fiduciary under The Employee Retirement Income Security Act of 1974 as amended, or similar responsibility under state statutory or common law, except if the Insured is deemed to be a fiduciary solely by reason of professional legal services rendered with respect to any employee benefit plan.

7. Arising out of an Insured's capacity as a public official or employee of a governmental body, subdivision or agency thereof unless the Insured is deemed-to-be-such-solely by virtue of rendering professional legal services to such governmental body, the remuneration for which services inures to your benefit; or

8. Made by or on behalf of:

   a. A non-profit entity or any of its affiliates or subsidiaries;

   b. An attorneys' bar association; or

   c. directors, officers or trustees of a non-Profit Entity or an attorneys' bar association;

   in any Insured's rendering of, or failure to render, non-profit-services, provided that this exclusion will not apply if the claim is made and continued by or on behalf of such non-profit entity or attorneys' bar association without the solicitation, assistance, active participation or intervention of such non-profit entity or attorneys' bar association or their respective directors, officers or trustees.

9. Arising out of a negligent act, error, omission, personal injury or non-profit service occurring prior to the inception date of this policy if any Insured prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission or personal injury might be expected to be the basis of a claim.

10. Arising out of:

    a. The promotion, sale or solicitation for sale of securities, real estate, investments or other assets by any insured; or

    b. Recommendations, representations, or opinions concerning investment advice by an insured or any person or organization referred to by an Insured for investment advice; or the performance or nonperformance of securities, real estate, investments, or other assets.

11. Arising out of professional legal services performed for or on behalf of any organization other than you or a predecessor firm if, at any time when those services were performed, the organization was or was intended to be:

LP 00 H053 01 0415                          ©2015, The Hartford

Page 8 of 12

a. Directly or indirectly controlled, operated or managed by an Insured; or

b. Owned by an Insured, or by a spouse of any Insured, in a percentage which exceeds:

  i. five percent of the issued and outstanding voting stock of the shares of a publicly traded organization; or

  ii. ten percent of the shares of a closely or privately held organization.

12. Against an Insured as a beneficiary or distributee of any trust or estate.

13. Arising out of liability assumed by an Insured under an indemnity, hold harmless or similar provisions or agreements, but this exclusion does not apply to liability an Insured would have in the absence of such agreements.

14. Arising out of any alleged conversion, misappropriation, commingling, or improper use of money or funds held for others.

15. Arising out of the alleged notarized certification or acknowledgment by any insured of a signature on a document when the Insured did not witness the signature being placed on the document.

16. Arising out of claims of actual or alleged sexual misconduct or sexual harassment by an Insured, whether or not alleged to be consensual.

17. Arising out of professional legal services performed by a lawyer with whom you shared common office space or common office facilities and who is not an Insured under this policy.

18. Arising out of defects in title which an Insured had knowledge of at the date of issuance of such title insurance.

19. Arising out of any intentional breach of underwriting authority by an Insured in the Insured's capacity as a title insurance agent.

## SECTION IV: CONDITIONS – CLAIMS

### A. AWARENESS OF CIRCUMSTANCES

If during the policy period an Insured becomes aware of any circumstance he or she believes might result in a claim or could reasonably have foreseen might result in a claim, the Insured shall immediately and in all instances prior to the expiration of the policy period, give written notice to us of the particulars of:

1. The nature and dates of the specific act, error, omission or other fact, circumstance or situation giving rise to the potential of a claim, including, without limitation, the identity of each Insured who participated and/or had supervisory responsibility for the matter and the reasons why it seems foreseeable that the matter may give rise to a claim;

2. The identity of each potential claimant and the alleged injury or damage which has resulted or may result from such circumstance and the steps, if any, undertaken or proposed to be undertaken to mitigate damages; and

3. The conditions under which the Insured first became aware of such circumstance.

This policy shall then apply to any claim that is subsequently made against the Insured and arises out of the fact, circumstance or situation reported as a notice of circumstances.

Written notice shall be provided to us at the address specified in the notice endorsement attached to this policy.

### B. NOTICE OF CLAIM

1. Reporting of a claim made against an Insured

   If, during the policy period or applicable extended reporting period, a claim is made against an Insured, you must give written notice in accordance with paragraph 2. below.

2. Insured's duties in the event a claim is received by an Insured

   a. You and any other involved Insured must see to it that we are notified immediately, but in no event later than sixty (60) calendar days after the expiration date of the policy period or within any applicable extended reporting period of any claim made against you. To the extent possible, written notice should include:

        i.  The specific claim including the date the claim was made and or received; and

        ii.  The damages that may reasonably result.

  b.  You and any other Involved Insured must:

        i.  Immediately send us copies of any demands, tolling agreements, complaints, notices, summonses or similar documents received in connection with the claim;

        ii.  Authorize us to obtain records and other information;

        iii.  Provide us with such information and cooperation as we may reasonably require in the investigation, evaluation, settlement or defense of the claim or suit; assist in making statements, in the conduct of suits or similar legal proceedings, attend hearings, depositions, and trials, assist on securing and giving evidence and obtaining the attendance of witnesses;

        iv.  Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to an Insured because of damages to which this insurance may also apply; and

        v.  Submit to an examination or interrogation under oath if requested by us.

  c.  No insured will, except at their own cost, voluntarily make a payment, assume any obligation, assume or admit liability, settle any claim or incur any expense without our prior written consent.

## C. FALSE OR FRAUDULENT CLAIMS

If any insured notifies us of a claim knowing it to be false or fraudulent, this policy shall become void.

## D. SUBROGATION

When any payment is made under this policy, we shall be subrogated to the Insured's right of recovery in connection with that payment. Each Insured shall do whatever is necessary to secure the right of recovery and shall do nothing to waive or prejudice such right.

We shall not exercise our rights of subrogation against an Insured under this policy unless such Insured has:

1. obtained any personal profit, remuneration or advantage to which such insured was not legally entitled, or

2. committed a criminal or fraudulent act or omission or any willful violation of law,

if a judgment or other final adjudication establishes such personal profit, remuneration, advantage, act, omission, or violation.

## E. NO ACTION AGAINST COMPANY

No action shall lie against us, unless, as a condition precedent, the Insured has fully complied with all the terms of the policy, and the amount of the Insured's obligation to pay shall have been fully determined either:

1. By written agreement of the Insured, the claimant, and us; or

2. By final judgment against the Insured.

## F. ALLOCATION

If a claim is made that includes both covered and non-covered matters, or a claim is made against covered and non-covered parties, we and the Insureds shall use reasonable efforts to achieve a fair and reasonable allocation based upon such relative exposure of such covered and non-covered matters and/or the proportionate fault of such covered and non-covered parties.

We shall advance on a current basis all claims expense in excess of the deductible amount incurred with respect to such claim prior to the final disposition of such claim; provided, however, that the foregoing shall not preclude us

from subsequently allocating claims expense pursuant to this provision and shall not apply to or create any presumption with respect to the allocation of damages.

### SECTION V: GENERAL CONDITIONS

#### A. CANCELLATION

1. You may cancel this policy by returning it to us. You may also cancel this policy by written notice to us stating at what future date cancellation is to be effective.

2. We may cancel or non-renew this policy by written notice to you at the address last known to us. We will provide written notice at least sixty (60) days before cancellation is to be effective. If we cancel this policy because you have failed to pay a premium when due, this policy may be canceled by us by mailing to you written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The time of surrender of this policy or the effective date and hour of cancellation stated in the notice shall become the end of the current policy period. Delivery (where permitted by law) of such written notice either by you or by us shall be the equivalent of mailing.

3. If we cancel this policy, the earned premium shall be computed pro rata. If you cancel this policy, we may retain a proportion of the premium greater than pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation

#### B. OTHER INSURANCE

This insurance is excess over any other valid and collectible insurance available to any Insured unless other insurance is written only as specific excess insurance over the limit of liability provided in this policy.

Coverage for damages and claims expense arising out of non-profit services shall be specifically excess of and not contribute with any insurance or indemnity available from or provided by the non-profit entity. Payment by the insurer or any insurance company controlling, controlled by or under common control with the insurer under any other insurance policy as a result of such claim shall reduce, by the amount of such payment, the insurers' limit of liability available under this policy for such claim.

#### C. ASSIGNMENT

Your rights and duties under this policy may not be transferred without our written consent, except in the case of death of an individual named Insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of their duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will assume your rights and duties.

#### D. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by an endorsement issued by us as part of this policy.

#### E. APPLICATION

By accepting this policy, you warrant:

1. The statements and representations in the application submitted to us are accurate and complete; and

2. We have issued this policy in reliance upon your statements and representations.

## F. CHOICE OF LAW

This policy in all matters and issues collateral thereto shall be governed by laws of New York applicable to contracts entered into and performed entirely within New York with respect to the determination of any claim, dispute or disagreement which may arise out of the interpretation, performance or breach of this policy, and will be subject to enforcement and interpretation solely in the appropriate courts of New York.

## G. CONFORMITY TO STATUTE

The terms of this policy, which are in conflict with the statutes of the state wherein this policy is delivered, are hereby amended to conform to such statute.

## H. LIBERALIZATION CLAUSE

If we adopt any revision that would broaden the coverage under the policy without additional premium at any time during the policy period, the broadened coverage will immediately apply to this policy.



**THE HARTFORD**

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**TWIN CITY FIRE INSURANCE COMPANY**
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Lisa Levin, Secretary

Douglas Elliot, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN



**THE HARTFORD**

## U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. Please read this Notice carefully.

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at — http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

# IMPORTANT POLICYHOLDER NOTICE

As a Hartford insured, you have access to a valuable risk management consultation hotline at no extra charge.  The HART-PRO hotline can help you avoid or mitigate a lawsuit.

HART-PRO can be reached at 1-866-HART-PRO and insureds are entitled to two free hours of consultation with an attorney from Lewis, Brisbois, Bisgaard & Smith, LLP.  All calls are confidential and your identity will not be reported to The Hartford.

The HART-PRO hotline is designed to:

- Help prevent a claim from being made
- Try to limit the exposure of a potential claim

We hope you take advantage of this valuable service offered free of charge exclusively to Hartford Professional Liability customers.

Thank you for choosing The Hartford.



**Producer Compensation Notice**

You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

# IMPORTANT POLICYHOLDER NOTICE
# RISK MANAGEMENT HOTLINE

As a Hartford insured, you have access to a valuable risk management consultation hotline at no extra charge. The hotline can help you avoid or mitigate a lawsuit.

The hotline can be reached at 1-833-884-7500 and insureds are entitled to four free hours of consultation with an attorney from Hinshaw & Culbertson LLP. All calls are confidential and your identity will not be reported to The Hartford.

The hotline is designed to:

- Help prevent issues that can cause claims

- Try to limit the exposure of a potential claim

We hope you take advantage of this valuable service offered free of charge exclusively to Hartford Professional Liability customers.

Thank you for choosing The Hartford.

ENDORSEMENT NO:

This endorsement, effective 12:01 am, 2/4/2018 forms a part of policy number: LT 1413455

Issued to: Law Offices Hillman, Forman, Childers & McCormack

by: Twin City Fire Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### DECEPTION FRAUD & OTHER CLIENT FUND FRAUD EXTENSION

This endorsement modifies insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

I. **SECTION I: SCOPE OF COVERAGE**, paragraph A., **COVERAGE AGREEMENT**, is amended by the addition of the following:

- **DECEPTION FRAUD & OTHER CLIENT FUND FRAUD**

  The Insurer will reimburse the **Insured** for any actual loss of **Client** funds for which the **Insured** was legally responsible resulting from **Deception Fraud** or **Other Client Fund Fraud**, subject to the Aggregate Limit of Insurance and Deductible stated in the Deception Fraud & Other Client Fund Fraud SCHEDULE below.

  Deception Fraud & Other Client Fund Fraud SCHEDULE

| Aggregate Limit of Insurance $25,000 | Deductible | $2,500 |
|---|---|---|

  This Aggregate Limit of Insurance is a part of, and not an addition to, the Limit of Liability as shown in the Declarations

II. **SECTION I: SCOPE OF COVERAGE**, paragraph B., **DEFINITIONS**, is amended by the addition of the following:

- **Deception Fraud** means the intentional misleading of the **Insured** by someone pretending to be a **Client**, which induces the **Insured** to part with **Client** funds.

- **Other Client Fund Fraud** means the intentional misleading of the **Insured** by a third party other than a **Client**, which induces the **Insured** to part with **Client** funds.

- **Client** means a natural person or entity for whom the **Insured** provides **Professional Legal Services**.

III. **SECTION III: EXCLUSIONS**, paragraph 14, is deleted and replaced by the following:

  14. Arising out of any alleged conversion, misappropriation, **Deception Fraud**, **Other Client Fund Fraud**, commingling, or improper use of money or funds held for others. However, this exclusion shall only apply to **Damages** or **Claims Expense** for **Deception Fraud** and **Other Client Fund Fraud** and not to the reimbursement for any actual loss of **Client** funds for which the **Insured** was legally responsible resulting from **Deception Fraud** or **Other Client Fund Fraud** within the identified Aggregate Limit of Insurance and subject to the applicable Deductible.

**IV. SECTION V: GENERAL CONDITIONS, paragraph B., OTHER INSURANCE, is amended by the addition of the following:**

- Any reimbursement of Client funds resulting from Deception Fraud or Other Client Fund Fraud shall be specifically excess of and not contribute with any other valid and collectible insurance, including without limitation crime or fidelity insurance, available to any Insured. Payment by the Insurer or any insurance company controlling, controlled by or under common control with the Insurer under any other insurance policy as a result of such Deception Fraud or Other Client Fund Fraud shall reduce, by the amount of such payment, the Insurer's Aggregate Limit of Insurance stated in the Deception Fraud & Other Client Fund Fraud SCHEDULE applicable to such Deception Fraud or Other Client Fund Fraud.

All other terms and conditions remain unchanged.

LP 00 H306 00 0417                    ©2017, The Hartford                    Page 2 of 2

# IMPORTANT POLICYHOLDER NOTICE
## RISK MANAGEMENT WEBSITE

As a Hartford insured, you now have free and exclusive access to a service designed to help you better protect your firm from professional liability litigation. Go to our website, http://Hartford.lawyeringlaw.com to access this information today.

**Login: Hartford**
**Password: Insure**

This site provides you with timely information on professional liability trends, laws and best practices. As a Hartford Lawyers Professional Liability policyholder, you have access to:

- Articles and publications authored by Hinshaw & Culbertson LLP attorneys on topics of professional liability and ethics
- Checklists, including risk management tools to assist lawyers in screening new clients, opening new files, and screening new employees from cases involving conflicts
- Law firm self-audit helping you analyze and evaluate your firm's practice management systems
- Decisions and summaries of recent cases involving professional liability issues
- Model letters to clients and non-clients
- Sample law firm policies
- State specific materials

We hope you take advantage of these valuable services offered free of charge exclusively to Hartford customers.

Thank you for choosing The Hartford.

This endorsement, effective 12:01 am, 2/4/2018 forms a part of policy number: LT 1413455

Issued to: Law Offices Hillman, Forman, Childers & McCormack

by: Twin City Fire Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEBRASKA CANCELLATION AND NON-RENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

The Cancellation provision of this Policy is deleted and replaced by the following:

### NOTICE OF CANCELLATION

A. Policies In Effect For Sixty (60) Days Or Less

  ·1. If this Policy has been in effect for sixty (60) days or less and is not a renewal policy, the Insurer may cancel this Policy by mailing a Notice of Cancellation to the Insured, at the last address known to the Insurer, at least:

    a. ten (10) days for non payment of premium; or
    b. sixty (60) days for any other reason.

  2. Notice of Cancellation will state the reason for cancellation

B. Policies In Effect For More Than Sixty (60) Days

  1. If this Policy has been in effect for more than sixty (60) days or is a renewal of a policy the Insurer issued, the Insurer may cancel this Policy by mailing a Notice of Cancellation to the Insured, at the last address known to the Insurer, at least:

    a. ten (10) days for non payment of premium; or
    b. sixty (60) days for any other reason.

  2. The Insurer may only cancel this Policy for the following reasons:

    a. Nonpayment of premium;

    b. The Policy was obtained through a material misrepresentation;

    c. The Insured or other Insured(s) has submitted a fraudulent Claim;

    d. The Insured or other Insured(s) has violated any of the terms and conditions of the policy;

    e. The risk originally accepted has substantially increased;

    f. Certification to the Director of Insurance of loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

HR 26 H001 00 0604         ©2004, The Hartford          Page 1 of 2

    g. The determination by the Director of Insurance that the continuation of the policy could place the Insurer in violation of the insurance laws of the state.

    3. The Notice of Cancellation will state the reason for cancellation.

C. If this Policy shall be cancelled by the Insured, the Insurer shall retain the customary short rate proportion of the premium hereon, except as otherwise provided in this Policy. If the Insurer cancels this Policy, the Insurer shall retain the pro rata proportion of the premium hereon.

The following provisions are added:

### NOTICE OF NONRENEWAL

The Insurer may nonrenew this Policy by mailing a Notice of Nonrenewal to the Insured, at the last address known to the Insurer, at least sixty (60) days prior to the expiration date or anniversary date of this Policy. The Notice of Nonrenewal will state the reason for nonrenewal.

### METHOD OF NOTIFICATION

Notice of Cancellation or Nonrenewal will be sent by registered, certified, or first-class mail to the Insured's last mailing address known to the Insurer. If sent by first-class mail, a United States Postal Service certificate of mailing shall be sufficient proof of receipt of Notice of Cancellation or Nonrenewal on the third (3rd) calendar day after the date of the certificate.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

This endorsement, effective 12:01 am, 2/4/2018 forms a part of policy number: LT 1413455

Issued to: Law Offices Hillman, Forman, Childers & McCormack

by: Twin City Fire Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

This policy does not apply to personal injury, bodily injury, or property damage arising out of asbestos including but not limited to:

1. inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. the use of asbestos in constructing or manufacturing any goods, products, or structures; or

3. the removal of asbestos from any goods, products, or structures; or

4. the manufacture, encapsulation, transportation, storage, handling, distribution, sale, application, mining, consumption or disposal of asbestos or goods or products containing asbestos.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 am, 2/4/2018 forms a part of policy number: LT 1413455

Issued to:  Law Offices Hillman, Forman, Childers & McCormack

by:  Twin City Fire Insurance Company

## MAILING ADDRESS FOR NOTICE ENDORSEMENT

I.     Notice of Claim or Wrongful Act

     A.  It is hereby understood and agreed that a notice of any claim or wrongful act shall be given in writing to the following:

*The Hartford*
*Claims Department*
*Hartford Financial Products*
*277 Park Avenue*
*New York, New York 10172*

*Facsimile: 917-464-6000*

*Email: Hfpclaims@TheHartford.com*

II.     <u>All Other Notices</u>

     A.  All notices for a claim or wrongful act must be mailed to the address as specified above in Item (I) of this endorsement.

     B.  It is hereby understood and agreed that all notices, except for a notice of claim or wrongful act, shall be given in writing to the following:

*Target Professional Programs*
*1230 East Diehl Road,*
*Suite 350*
*Naperville, IL 60563*

*Facsimile:  (630) 961-0284*

*Email: Lawyerprogram@TargetProIns.com*

All other terms and conditions of the policy remain unchanged.

**ENDORSEMENT NO:**

This endorsement, effective 12:01 am, 2/4/2018 forms a part of policy number: LT 1413455

Issued to: Law Offices Hillman, Forman, Childers & McCormack

by:  Twin City Fire Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

**SECTION III: EXCLUSIONS**, is amended to include the following:

based upon, arising from, or in any way related to any:

1.  actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

2.  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste; or

3.  direction, request or voluntary decision that any insured monitor, clean up, remove, contain, treat, restore, recondition, recycle, or reclaim any real or personal property or water due in part or in whole to the presence or effect of pollutants.

**SECTION I: SCOPE OF COVERAGE**, paragraph B., is amended to include the following:

Pollutants means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste and any electric, magnetic or electromagnetic field of any frequency.  Waste includes, without limitation, material to be recycled, reconditioned or reclaimed.  Pollutants shall also mean any unlisted substance exhibiting characteristics of ignitability, corrosivity, reactivity or toxicity to a degree which would cause it to be so listed if the subject were to be addressed by the E.P.A. or state, county, municipal or other local government counterpart thereof.

All other terms and conditions remain unchanged.

**ENDORSEMENT NO:**

This endorsement, effective 12:01 am, 2/4/2018 forms a part of policy number: LT 1413455

Issued to:  Law Offices Hillman, Forman, Childers & McCormack

by:  Twin City Fire Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### NETWORK SECURITY, DATA BREACH AND THEFT OF DATA COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**LAWYERS' PROFESSIONAL LIABILITY POLICY**

I.  **SECTION I. SCOPE OF COVERAGE, A. COVERAGE AGREEMENT** is deleted and replaced by the following:

**A.   COVERAGE AGREEMENTS**

**A.1 LAWYERS PROFESSIONAL SERVICES COVERAGE**

We will pay on behalf of an insured, subject to the limit of liability, such damages and claims expense in excess of the applicable deductible amount for claims made during the policy period or applicable extended reporting period and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the policy period or applicable extended reporting period.  The damages must arise out of a negligent act, error, omission or personal injury in the rendering of or failure to render professional legal services for others by you or on your behalf provided always that the negligent act, error, omission or personal injury occurs on or after the retroactive date as stated in the Declarations.

**A.2 NETWORK SECURITY WRONGFUL ACT COVERAGE**

We will pay on behalf of an insured, subject to the limit of liability, such damages and claims expense in excess of the applicable deductible amount for claims made during the policy period or applicable extended reporting period and reported to us immediately, but in no event later than sixty (60) calendar days after the expiration of the policy period or applicable extended reporting period.  The damages must arise out of a network security wrongful act in the rendering of or failure to render professional legal services for others by you or on your behalf provided always that:

a.  such claim arises solely from a network security wrongful act that occurred on or after the retroactive date; and

b.  with respect to such claim, no insured as of the inception date of this policy was aware of any network security wrongful act, fact, circumstance or other situation that he or she knew might result in a claim or  could reasonably have foreseen might result in a claim.

All actual or reasonably suspected identity theft from unauthorized access or use which has a common event, cause, circumstance or condition will be classified as one event and any associated theft of data expenses will be subject to the limit of liability and deductible amount of the policy in which the unauthorized access or use was first reported to the us.

### A.3 DATA BREACH AND THEFT OF DATA EXPENSES EXTENSION

We will pay on behalf of the insured reasonable and necessary data breach and theft of data expenses, subject to the sub limit of liability for data breach and theft of data expenses, as set forth below, and in excess of the data breach and theft of data expense deductible amount, incurred by the insured that are the direct result of an actual or reasonably suspected identity theft from unauthorized access or use that first takes place on or after the retroactive date as stated in the Declarations and is discovered by any insured during the policy period. Coverage for such expenses shall be available regardless of whether a claim has been made, provided that notice is given to us as required under the notice provisions set forth in Section IV: CONDITIONS - CLAIMS.

II.  **SECTION I. SCOPE OF COVERAGE, B. DEFINITONS, is amended by the addition of the following:**

- **Computer System** means computer hardware (including laptops, smart phones, memory devices or personal digital assistants), software applications and tools (including licensed software), middleware, websites, and related electronic backup, but only if:

    a.  owned or leased, and operated, by the insured; and

    b.  connected to the insured computer network.

- **Credit Monitoring and Notification Expenses** means reasonable and necessary costs incurred by the insured in connection with a statutory or regulatory mandate requiring credit monitoring or notice to specified individuals in compliance with state or United States federal data privacy laws or regulations.

- **Crisis-Management Expenses** means those services performed by a public relations firm, crisis management firm or law firm hired or appointed by us, to minimize potential harm to the insured arising from a network security wrongful act as defined above.

- **"Cyber Investigation Expenses** means:

    a.  those reasonable and necessary expenses the insured incurs to hire a Third Party computer security expert to conduct an investigation of its computer system to determine the source or cause of the unauthorized access or use that gave rise to the actual or reasonably suspected identity theft which may require the insured to comply with Notification Laws and to determine the extent to which nonpublic personal information was accessed as a result of such unauthorized access or use; or

    b.  fees charged by a Third Party attorney to determine the applicability of and actions necessary by the insured to comply with notification laws due to an actual or reasonably suspected identity theft resulting from unauthorized access or use.

    Cyber Investigation Expenses does not include compensation, fees, benefits, overhead, or other charges or expenses of any insured.

- **Data Breach and Theft of Data Expenses** means Crisis Management Expenses, Credit Monitoring and Notifications Expenses and Cyber Investigation Expenses.

- **Denial of Service** means the inability of an authorized entity to gain access to the insured's online marketplace, to conduct E-commerce, transmit E-mail or to affect File Transfers.

- **Identity Theft** means the unauthorized taking or misuse of non public personal information from the insured's computer system, the access to which is restricted by reasonable security measures.

- **Malicious Code** means unauthorized and either corrupting or harmful software code, including but not limited to, computer viruses, Trojan horses, worms, logic bombs, spy-ware, malware or spider ware.

- **Network security wrongful act** means an actual or alleged negligent act, error or omission committed in connection with the performance or failure to perform professional legal services, which results in any of the following:

    a. Denial of service;

    b. the inadvertent transmission of a malicious code;

    c. Identity theft ; or

    d. Unauthorized access or use.

  Solely with respect to the data breach and theft of data expenses coverage afforded in this endorsement, the definition of network security wrongful act is further amended by deleting the words: "committed in connection with the performance or failure to perform professional legal services".

- **Non public personal information** means a natural person's first name and last name in combination with any one of the following: 1) social security number; 2) medical or healthcare information or data; 3) drivers license number or state identification number; or 4) financial account information that would permit access to that individual's financial account.

- **Notification Laws** means any data privacy laws to which the insured is subject that requires an insured storing non public personal information to provide notice to specified individuals of any actual or reasonably suspected identity theft with respect to such non public personal information.

- **Unauthorized Access or Use** means:

    a. the gaining of access to a insured's computer system by any person who is not authorized to gain such access; or

    b. the use of an insured's computer system by any insured outside the scope of his or her employment.

- **Website** means the software, content and other materials accessible via the internet at a designated Uniform Resource Locator address owned by the insured.

III. **SECTION I. SCOPE OF COVERAGE, D. LIMIT OF LIABILITY AND DEDUCTIBLE** is amended by the addition of the following:

Coverage provided for network security wrongful act claims is subject to the limit of liability as stated in the Declarations and is part of and not in addition to such limits.

**Data Breach and Theft of Data Expense Extension:**

Notwithstanding any other provisions of this policy, but subject to all terms and conditions of this policy, we shall pay data breach and theft of data expenses up to a maximum payment by us of the data breach and theft of data expenses sub-limit of liability set forth below. This amount will be included within and shall serve to reduce the limit of liability. Our obligation to pay data breach and theft of data expenses under this policy applies only to the amount of such expenses which are in excess of the data breach and theft of data expenses Deductible set forth below.

IV. The first sentence of Section III. **EXCLUSIONS** is deleted and replaced with the following:

**EXCLUSIONS** – This insurance does not apply to claims or claims expense or data breach and theft of data expense:

V. **SECTION III. EXCLUSIONS,** Item 3, is deleted and replaced with the following:

3. Arising out of any **bodily injury** or **property damage**; provided however, that this exclusion will not apply to a claim for mental injury, mental tension, mental anguish, or emotional distress directly resulting from a **network security wrongful act**;

VI. **SECTION III. EXCLUSIONS** is amended by the addition of the following:

- based on, arising out of or in any way related to any unsolicited dissemination of information by faxes or e-mails where prohibited by law; including but not limited to actions brought under the Telephone Consumer Protection Act, Fair and Accurate Credit Transactions Act of 2003, Fair Debt Collections Practices Act or any federal or state anti-spam statutes, and/or any other similar federal or state statute, law or regulation relating to a person's or entity's right of seclusion;

- arising out of the actual or alleged violation of any state or federal antitrust, restraint of trade, or unfair competition laws;

- based on, arising out of or in any way related to any **network security wrongful act** or shortcoming in a **computer system** that any **insured** knew about prior to the inception of this **policy period**;

- based on, arising out of or in any way related to any **insured's** failure to take steps to use, design, maintain or upgrade a **computer system** in order to prevent or avoid a **network security wrongful act**;

- based on, arising out of or in any way related to the inability to use, or lack of performance of, software:

   a. due to expiration, cancellation, or withdrawal of such software;

   b. that has not yet been released from its developmental state; or

    c.  that has not passed all test runs or proven successful in applicable daily operations.

- based on, arising out of or in any way related to any failure to use best efforts to: 1) install commercially available software product updates and releases; or 2) to apply security related software patches, to computers and other components of the computer system;

- based on, arising out of or in any way related to any Named Viruses   as identified by governmental authorities and any software or security technology provider;

- based on, arising out of or in any way related to any Insured's intentional failure to disclose the loss of nonpublic personal information arising from a network security wrongful act if any Insured was aware of such  network security wrongful act;

- based on, arising out of or in any way related to any war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war is declared or not), strike, lock-out, riot, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power;

- based on, arising out of or in any way related to any fees, expenses, or costs, paid to or charged by the Insured;

- based on, arising out of or in any way related to any intentional or knowing violation of the insured's privacy policy.

- arising out of any electrical or mechanical failures and/or interruption, including but not limited to any electrical disturbance, surge, spike, brownout or blackout; and outages to gas, water, telephone, internet, cable, satellite, telecommunications or other infrastructure;

- based on, arising out of or in any way related to any malicious code other than damages, claims expense or data breach and theft of data expenses directly resulting from the inadvertent transmission of malicious code; or

- based on, arising out of or in any way related to any Insured's intentional or knowing violation of the Insured's employment practice policy, including but not limited to background checks for employees and limiting of access to non public personal information.

- arising out of the actual or alleged violation of any state or federal unfair competition laws or consumer protection laws other than damages, claims expense or data breach and theft of data expenses directly resulting from any such violation which constitutes a network security wrongful act;

VII. SECTION IV. CONDITIONS - CLAIMS, is amended by the addition of the following:

C.  Data Breach and Theft of Data Expense Extension Notice

As a condition precedent to coverage, the named Insured shall report to us any network security wrongful act for which it seeks data breach and theft of data expenses coverage under this policy. Such notice must be reported within thirty (30) days of when the Insured first discovers the network security wrongful act. The Insured shall obtain prior written approval from us prior to incurring data breach and theft of data expenses.

In the event that data breach and theft of data expense coverage is sought, the request for such data breach and theft of data expense coverage shall be deemed an Awareness of Circumstances under Section IV. CONDITIONS - CLAIMS, Paragraph A. and any claim arising

therefrom shall be deemed to be first made during the policy period.

VIII. DECLARATIONS is amended by the addition of the following:

Data Breach and Theft of Data Expenses Deductible $10,000.

Data Breach and Theft of Data Expenses Sub-Limit of Liability $25,000.00 in the aggregate.

All other terms and conditions remain unchanged.

Douglas Elliot, President

**ENDORSEMENT NO:**

This endorsement, effective 12:01 am, 2/4/2018 forms a part of policy number: LT 1413455

issued to: Law Offices Hillman, Forman, Childers & McCormack

by: Twin City Fire Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WORKPLACE VIOLENCE COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**LAWYERS' PROFESSIONAL LIABILITY INSURANCE POLICY**

I.  **SECTION II: COVERAGE EXTENSIONS** is amended by the addition of the following:

- **WORKPLACE VIOLENCE**

    We will pay on behalf of the named insured any workplace violence expenses resulting from a workplace violence action occurring during the policy period and reported to us, pursuant to SECTION IV. CONDITIONS - CLAIMS.

    Our maximum aggregate liability for all such workplace violence axpenses shall be the Sub-Limit of Liability of $50,000.00. This Sub-Limit shall be part of, and not in addition to, the Aggregate Limit of Liability for this policy shown on the declarations. Payment of **workplace violence expenses** by the Insurer shall reduce such Aggregate Limit of Liability. No deductible shall apply to the workplace violence expenses.

II.  Solely for the purpose of the coverage provided for workplace violence expenses, Section I: SCOPE OF COVERAGE, B. DEFINTIONS is amended by the addition of the following:

- **Business interruption expenses** means the amount calculated as set forth below for a period of time commencing the day the workplace violence action occurs and ending on the earlier of ninety (90) days following such date or the date that the named Insured restores operations, with due diligence and dispatch, to the level that existed prior to the workplace violence action:

    (1)  The sum of:
    - a)  net profits before income taxes that would have been earned had no workplace violence action occurred;
    - b)  the actual costs of continuing the activities which are necessary for the named insured to resume operations with substantially the same quality of service which existed immediately preceding the workplace violence action; and
    - c)  reasonable expenses which would not have been incurred except for such workplace violence action and which were incurred by the named insured for the sole purpose of reducing business interruption expenses described in 1(a) or 1(b), not to exceed the amount of actual reduction of such business interruption expenses.

    (2)  Less the sum of:
    - a)  all recoveries, other insurance, suretyship and other indemnity which cover business interruption expenses; and
    - b)  the amount by which the named insured reasonably could have, but failed to, reduce business interruption expenses.

- **Employee** means any natural person while such person was or is an employee of the named

insured including any part time, seasonal, temporary, leased, or loaned employee. Employee does not include any manager.

- **Employee expenses** means the reasonable fees and expenses for, or cost of:

  (1) the salary or wages, for up to ninety (90) days following the date the workplace violence action occurs, that the named insured pays individual insureds victimized by the workplace violence action and unable to continue to work because of such workplace violence action. The individual insured's salary or wages in effect at the time of the workplace violence action shall apply;

  (2) the salary or wages, for up to ninety (90) days following the date the workplace violence action occurs, that the named insured pays a newly hired person(s) or temporary employee(s) to work because of such workplace violence action; however such salary or wage shall not exceed the salary or wage of the relevant victimized individual insured(s) in effect at the time of the workplace violence action;

  (3) reasonable expenses for a counseling seminar for individual insureds conducted by an independent consultant within ninety (90) days following the workplace violence action;

  (4) reasonable expenses for the hiring of an independent security guard for up to thirty (30) days following the workplace violence action; or

  (5) reasonable expenses for the services of an independent security consultant for purposes of devising a security plan for the named insured.

- **Individual insured** means any:

  (1) Employee; or
  (2) Natural person who is neither an employee nor manager visiting the premises for a lawful purpose.

- **Manager** means any natural person while such person was or is a partner, owner, director, trustee, officer, principal, shareholder, or member of the named insured or any other individual with an ownership interest in the named insured;

- **Physical injury** means physical damage to a person's body caused by an external source.

- **Premises** means any building, facility, or property occupied by the named insured in conducting its operations.

- **Public relations firm expenses** means the reasonable and necessary fees charged by an organization specializing primarily in maintaining or restoring the public image of businesses or non-profit organizations, where such organization is retained to aid in the restoration of the named insured public image.

- **Workplace violence action** means any actual or alleged intentional and unlawful use of deadly force with an intent to cause harm that occurs at the premises that results in physical injury.

- **Workplace violence expenses** means:
  (1) business interruption expenses;
  (2) employee expenses; and
  (3) public relation firm expenses.

III.  Solely for the purpose of the coverage provided for workplace violence expenses, **SECTION III: EXCLUSIONS** is amended by the addition of the following:

- We shall not pay any workplace violence expenses:

  (1) based upon, arising from, or in any way related to war, invasion, insurrection, riot, rebellion, revolution, civil war, or military action; or

  (2) based upon, arising from, or in any way related to the use or threat of force or violence occurring for the purpose of demanding money, securities, or property.

- The Insurer shall not pay any legal costs, attorneys fees, expenses, settlements, judgments, penalties or other amounts incurred as a result of any claim, suit or other legal proceeding brought against an insured in connection with a workplace violence action.

All other terms and conditions remain unchanged.



Peter Blejwas
Claims Consultant
Hartford Financial Products
Lawyers Professional Liability
277 Park Avenue, 15th Floor
New York, NY 10172
Tel: 212-277-0448

September 27, 2018

Larry R. Forman, Esq.
Law Offices Hillman, Forman, Childers & McCormack
7171 Mercy Road, Suite 650
Omaha, NE 681062669

Re:   **Insurer:**          Twin City Fire Insurance Co.
      **Insured:**          Law Offices Hillman, Forman, Childers & McCormack
      **Policy:**           Lawyers Professional Liability
      **Policy No.:**       LT 1413455
      **Matter:**           Cano, Eric
      **Reference No.:**    18418713

Dear Mr. Forman,

In follow up to our telephone conversation on Monday, I am writing to supplement our August 14, 2018 correspondence providing our initial coverage analysis with regard to the above matter, incorporated herein by reference. Also, this letter acknowledges our subsequent receipt on September 4, 2018, of a Complaint styled <u>Eric C. Cano v. Larry R. Forman and Hillman, Forman, Childers & McCormack</u>, venued in the District Court of Douglas County, Nebraska (the "Complaint"),and your August 24, 2018 and August 31 emails submitting a portion of your Brief to the Court of Appeals and the <u>Rentmeester v Wisconsin Lawyers Mutual Insurance Company</u>. Please also be advised that for the reasons discussed below, and as discussed in our prior phone conversations, Twin City Fire Insurance Company respectfully disclaims of coverage for the above matter.

Twin City Fire Insurance Company ("Twin City") issued policy number LT 1413455 (the "Policy") to the above named Insured effective for the period February 4, 2018 to February 4, 2019. The Policy is written on a claims made and reported basis and provides limits of $3,000,000 per **claim** and $3,000,000 in the aggregate, inclusive of **claims expense** and **damages**. In addition, the captioned policy is subject to a $10,000 per **claim** deductible requirement, which is applicable to **claims expense** and **damages**. Please note that the words that appear in **boldface type** are defined terms in the Policy.

*Factual Background*

We understand that this matter arises from Hillman, Forman, Childers & McCormack's retention to pursue collection of a $299,500 promissory note executed in 2007 by Michael Walker and Billy E. Clayborn, Jr. We also understand that the firm filed suit in 2012 and on November 20, 2013 secured summary judgment on behalf of Cano against Walker and Claborn holding them jointly and severally



Larry R. Forman, Esq.
Law Offices Hillman, Forman, C
September 27, 2018
Page 2 '

liable in the amount of $387,433.20 including principal, interest and penalties, As stated in the Supreme Court's decision Cano did not tell the court at the summary judgment hearing that he and Claborn had entered into a "Stipulation" on November 11, 2013, without Walker's knowledge. The Stipulation provided that Claborn agreed to entry of judgment against him for the full amount of the note and agreed to pay Cano $40,000 immediately and $127,000 by June 2, 2014, plus another $10,000 in services, and in exchange Cano agreed to release Claborn completely from the judgment, filing a satisfaction against Claborn in July 2014 with a stipulation that the judgment entered against Michael Walker remained unsatisfied. Per the Supreme Court's decision, in November 2015, Cano attempted once again to collect the judgment against Walker by seeking an order in aid of execution from the court which Walker filed an objection to, raising for the first time the argument that satisfaction of the judgment against Claborn operated to satisfy the judgment against Walker as well. The district court initially ruled in Cano's favor against Walker, but on September 1, 2017 the Supreme Court reversed. As stated in the Complaint:

> The Nebraska Supreme Court ruled the "voluntary release" of one joint debtor operates as a release of all co-debtors. In this case, the release of Mr. Claborn through the stipulation released Mr. Walker as well. The Nebraska Supreme Court noting this has been the law for over a century in Nebraska dating back to 1882..

The Complaint further states that the decision "was reached by the Nebraska Supreme Court on September 1, 2017 at which time Mr. Cano discovered the negligence of Mr. Forman." You have indicated that shortly after the decision was rendered you drove out to Cano's home to deliver the decision to him in person. The Complaint alleges a breach of the standard of care by Defendant Forman, and asserts that he has been damaged as the entire judgement awarded was collectible from Walker and/or Claborn. The Complaint seeks special damages, pre- and post-judgment interest, costs and other relief that court deems just and equitable.

### Coverage Position

Based on the information available to date, it is important that we bring certain policy provisions to your attention as they may be applicable in the future. By commenting on coverage for this matter, we do not mean to suggest that any allegations which may have been made, which are completely unsubstantiated, have any merit.

Please note Section I of the policy, Scope of Coverage, paragraph A, The Coverage Agreement which states:

#### A. COVERAGE AGREEMENT

We will pay on behalf of an insured, subject to the limit of liability, such damages and claims expense in excess of the applicable deductible amount for claims made during the policy period or applicable extended reporting period and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the policy period or applicable extended reporting period. The damages must arise out of a negligent act, error, omission or personal injury in the rendering of or failure to render professional legal services or non-profit services for others by you or on your behalf

Larry R. Forman, Esq.
Law Offices Hillman, Forman, C
September 27, 2018
Page 3

provided always that the negligent act, error, omission or personal injury occurs on or after the retroactive date as stated in the Declarations.

Section I B of the policy, Definitions, paragraph 2, provides that a claim means:

    a.  a demand received by an **insured** for money or services alleging a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** or **non-profit services** for others by you or on your behalf, or

    b.  service or receipt of a suit or arbitration proceedings or any other alternative dispute resolution proceeding in which **damages** are claimed; or

    c.  A request received by an **insured** for a tolling agreement with respect to statutes of limitations or other bars against the filing or maintenance of lawsuit or arbitration proceeding seeking **damages** or services from an **insured**.

We are satisfied that the Complaint constitutes a claim under the Policy. However, please note Section III of the Policy Exclusions, paragraph 9 which provides in part that this insurance does not apply to claims:

Arising out of a negligent act, error, omission, **personal injury** or **non-profit service** occurring prior to the inception date of this policy if any **insured** prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission or **personal injury** might be expected to be the basis of a **claim**.

The Policy's inception date is February 4, 2018. At least as early as September 1, 2017, an Insured appears to have known or could reasonably foresee that Cano's claim against Walker had been lost as the stipulation entered into with Claborn failed to take into account established common law that the unconditional release of one of several joint obligors on a promissory note, without the consent of the other obligors, operates as a release of all. Accordingly, Twin City regretfully must disclaim coverage for this matter as per section III (9) as an Insured knew or could have reasonably foreseen that a negligent act, error, or omission might be the basis of a prior to the Policy's February 4, 2018 inception date.

Please also note Section V of the Policy, General Conditions, paragraph E, which provides that by accepting the policy the Firm warrants that the statements in the application submitted to Twin City were accurate and complete. Hillman, Forman, Childers & McComack's renewal application submitted for the February 4, 2018 to February 4, 2019 Question # 6 asks "Since the completion of the Firm's last application, has the Firm or any attorney associated with the Firm been made aware of a: a. Claim or circumstances that could result in a clam?" The insured answered "No." The firm did not disclose any potential claims in regard to the unfavorable Supreme Court decision rendered against Cano in his pursuit of collection of the judgment against Walker. As it appears that the Firm or an attorney associated with the Firm was aware of circumstances that could result in a claim by Cano based on the September 1, 2017 Supreme Court decision, Twin City also disclaims coverage for this matter based on the failure to disclose it at the time of application.

Larry R. Forman, Esq.
Law Offices Hillman, Forman, C
September 27, 2018
Page 4

In light of this coverage denial, Twin City will not provide any insureds with a defense or indemnity to this matter. We encourage you to immediately take any and all steps necessary to protect your interests in this matter. We have not addressed additional issues that may impact coverage. We reserve the right to do so in the event that additional information causes us to revise our position. Of course, if you have any additional information you believe should be factored into our analysis of coverage, please feel free to provide us with such information and we will gladly review it for its impact on coverage.

*Other Insurance*

The allegations made may give rise to coverage under other insurance policies. Accordingly, if you have not already done so, we advise you to immediately place any and all other applicable insurers on notice of this matter.

We trust you appreciate that this statement of Twin City's position is without prejudice to you or the Insured firm, to anyone else, or to Twin City. Twin City reserves the right to supplement any grounds for reserving rights or denying coverage under the referenced policy should any grounds appear hereafter, including the right to rescind the Policy based on representations, statements, declarations, and omissions on connection with the application for the Policy. This letter does not constitute, nor should it be construed by you as a waiver of any terms, and/or conditions of the Policy or Twin City's rights thereunder, all of which continue in full force and effect.

In the event that you have any questions with regard to the above, or any other inquiries arise, I can be reached at 212-277-0448.

Very truly yours,

Peter M. Blejwas

Peter M. Blejwas, Esq.
Claims Consultant

Larry R. Forman, Esq.
Law Offices Hillman, Forman, C
September 27, 2018
Page 5



**THE HARTFORD**

Peter Blejwas
Claims Consultant
Hartford Financial Products
Lawyers Professional Liability
277 Park Avenue, 16th Floor
New York, NY 10172
Tel: 212-277-0448

November 9, 2018

David M. Woodke, Esq.
Woodke & Gibbons, P.C. L.L.O. Historic Inns of Court
619 N. 90th Street
Omaha, NE 68114

Re: **Insurer:**          Twin City Fire Insurance Co.
    **Insured:**          Law Offices Hillman, Forman, Childers & McCormack
    **Policy:**           Lawyers Professional Liability
    **Policy No..:**      LT 1413455
    **Matter:**           Cano, Eric
    **Reference No.:**    18418713

Dear Mr. Woodke,

I am writing in response to your October 16, 2018 correspondence regarding Twin City's disclaimer of coverage for the above referenced matter. We have reviewed your correspondence and the case law referenced therein and for the reasons previously expressed in our correspondence dated September 27, 2018 supplementing our August 13, 2018 correspondence, incorporated herein by reference, Twin City Fire Insurance Company respectfully maintains its position that there is no coverage for the above matter under the Policy, and accordingly will not be providing a defense or indemnity.

Twin City Fire Insurance Company ("Twin City") issued policy number LT 1413455 (the "Policy") to the above named Insured effective for the period February 4, 2018 to February 4, 2019. The Policy is written on a claims made and reported basis and provides limits of $3,000,000 per claim and $3,000,000 in the aggregate, inclusive of **claims expense** and **damages**. In addition, the captioned policy is subject to a $10,000 per **claim** deductible requirement, which is applicable to **claims expense** and **damages**. Please note that the words that appear in **boldface** type are defined terms in the Policy.



EXHIBIT
3

Your correspondence argues that Policy Section III Exclusions, paragraph 9 should be read as a condition and not an exclusion, requires the showing of prejudice, and that Exclusion 9 is ambiguous. We disagree.

It is not disputed that Walker and Claborn were co-obligors under a promissory note and that the Insured secured a judgment in Cano's favor against them based on the full value of the debt. At that point both Walker and Claborn were liable to Cano. The Supreme Court's opinion makes clear that as a result of the subsequent actions of the Insured, Walker was subsequently released of any liability, and Cano was left with only a partial satisfaction of the debt owed. Your letter acknowledges the September 1, 2017, Nebraska Supreme Court decision in Mr. Cano's case was adverse but does not address the substance of the Court's opinion.

The Court stated:

> In the area of contracts, Nebraska has long followed the common-law rule that the "voluntary release'" of one joint debtor operates as a release of his or her codebtors.
> It is well settled that "'[t]he unconditional release of one of several makers of a joint and several promissory note, without the consent of the other makers thereof, operates as a release of all.'"
>
> The question presented in this appeal is whether, on the facts of this case, the common-law rule applies. The answer to that question turns on whether the stipulation between Cano and Claborn, and/or the subsequent satisfaction of judgment, represented an unconditional and voluntary release of Claborn. If so, then under the common-law rule, Walker was also released.

After a review of case law and the facts of the case, the Supreme Court stated:

> We find the plain and unambiguous language of this stipulation operated as an unconditional and voluntary release of Claborn as soon as he satisfied its terms. Our record does not reveal the precise date on which Claborn satisfied the terms of the stipulation, but there is no dispute that he did so...

The Insured on Cano's behalf then urged the court "to abolish the common-law rule that the unconditional release of one of several co-obligors on a note, without the consent of the others, operates as a release of all." The Court however rejected the Insured's argument to depart from the century long, "predictable, easy to understand and easy to apply" precedent and stated:

> The common-law rule in contracts—that an unconditional release of one joint obligor without the consent of the others operates to release all—has governed business decisions and contractual arrangements in Nebraska for more than a century. The rule is predictable, easy to understand, and easy to apply. Moreover, at least as it has developed in Nebraska, the common-law rule includes the unique requirements that a release of one joint debtor must be both "voluntary" and "unconditional" before the rule operates to release all joint debtors. So if individuals and businesses want to structure releases in a way that avoids the consequences of the rule, it is clear how to do so.
>
> We see no principled reason to depart from this settled precedent, and we decline Cano's invitation to abolish the common-law rule in Nebraska.

The Supreme Court concluded:

> Under settled Nebraska contract law, the unconditional release of one of several joint obligors on a promissory note, without the consent of the other obligors, operates as a release of all. Walker and Claborn were co-obligors on a promissory note that was reduced to a judgment. Without the consent of Walker, Cano and Claborn entered into a stipulation which operated as an unconditional release of Claborn once he satisfied the terms of the stipulation.
>
> As such, under the common-law rule in Nebraska, the unconditional release of Claborn from the judgment operated as a release of Walker….

It is not surprising therefore that Mr. Cano's complaint states that the decision "was reached by the Nebraska Supreme Court on September 1, 2017 at which time Mr. Cano discovered the negligence of Mr. Forman." Further, the language of the exclusion is clear. It provides that the insurance does not apply to claims:

> Arising out of a negligent act, error, omission, **personal injury or non-profit service** occurring prior to the inception date of this policy if any **insured** prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission or **personal injury** might be expected to be the basis of a **claim**.

The September 2017 Nebraska Supreme Court decision makes it clear that this was well settled law for more than a century, and that the stipulation entered into with Mr. Claborn, to attempt avoid the consequences of the voluntary release of one joint debtor operates as a release of all co-debtors rule, was unsuccessful.

Therefore, an **Insured** knew or could have reasonably foreseen at least as early as September 1, 2017 Supreme Court decision, that the negligent act, error, or omission of releasing one co-debtor indebted to his client, released the other co-debtor. Since the September 1, 2017, Supreme Court decision was prior to the policy's February 8, 2018 inception date, there is no coverage for this matter.

Should you have any additional information you believe should be factored into our analysis of coverage, please feel free to provide us with such information and we will gladly review it for its impact on coverage.

Because the issue discussed above is dispositive, we have not addressed all issues raised in your correspondence here but reserve our rights to do so. This statement of Twin City's position is without prejudice to the insureds or to Twin City. Twin City reserves its right to supplement the basis for denying coverage in this matter. This letter does not constitute, nor should it be construed as a waiver of any terms, and/or conditions of the Policy or Twin City's rights under the Policy, at law and/or in equity including the right to rescind the Policy based on representations, statements, declarations, and omissions on connection with the application for the Policy. Twin City considers all such rights fully and mutually reserved.

Should you have any questions or wish to discuss this matter further, I can be reached at 212-277-0448.

Very truly yours,

Peter M. Blejwas, Esq,
Claims Consultant